## H. P. DALE, Administrator, vs. HULDAH J. BRUMBLY, Administratrix.

*Benefit Societies—By-Law Prohibiting Assignment of Insurance Certificate to Creditor.*

When the by-law of a benefit society, the beneficiaries to be of certain designated classes, provides that no certificate of life insurance shall be made payable to a creditor of a member, nor be assigned to secure a debt, full effect will be given to such provision; and when a member has made to a creditor an absolute assignment of a certificate which was made payable to his estate, such assignee, upon the death of the member, cannot enforce payment thereof, but the fund belongs to the family of the deceased member.

Appeal from the Circuit Court for Wicomico County (PAGE, C. J., and HOLLAND, J.) The bill of interpleader in this case, filed by the Supreme Conclave, Improved Order of Heptasophs, set forth the following by-laws of that order:

"280. The benefit may be made payable to any one or more persons of any of the following classes only :

*Class First.*—Grade first. Member's wife. Grade second. Member's children. Grade third. Member's grand-children. Grade fourth. Member's parents. Grade fifth. Member's brothers and sisters of the whole blood. Grade sixth. Member's brothers and sisters of the half-blood. Grade seven. Member's grand-parents. Grade eight. Member's nieces and nephews. Grade nine. Member's cousins in the first degree. Grade ten. Member's aunts. Grade eleven. Member's uncles. In either of which cases no proof of the dependency of the beneficiary shall be required.

*Class Second.*—To any person who is dependent upon the member for maintenance (food, clothing, lodging or education), in either of which cases written evidence of the dependency, within the requirements of the laws of the order, must be furnished to the satisfaction of the Supreme Secretary before the benefit certificate can be issued. The word "evidence" means sworn and legal proof.

"Sec. 281. No member shall be permitted to designate by will to whom any benefits or any part or portion thereof, shall be paid. Nor shall he be permitted to sell or assign his beneficiary certificate, or any part or portion thereof. But the same shall be due and payable only to the person or persons therein named by the member except as hereinafter provided."

"Sec. 284. If at the time of death of the member he has designated as his beneficiary a person in class second, the dependency required by the laws of the order shall have ceased or shall be found not to have existed, or if any designation shall fail for illegality or otherwise, if he shall have made no other or further disposition, as provided by the law of the order the amount of his benefit certificate shall then be paid to those to whom distribution would be made of his personal estate, in case of intestacy as provided by the laws of the State where the member held his last legal residence at the time of his death."

"Sec. 285. A member may, at any time when in good standing pay a fee of fifty cents, make a written surrender of his benefit certificate, on the back thereof, and make direction that a new certificate be issued to him, payable to such beneficiary or beneficiaries as such member may designate, in accordance with the laws of the order."

"290. The issue of a new benefit certificate in accordance with the laws of the order, shall cancel and render null and void any and all previous certificates issued to a member."

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*James E. Ellegood,* for the appellant.

*Robert P. Graham,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an interpleader proceeding instituted on the 5th day of August, 1901, in the Circuit Court for Wicomico County to establish the ownership of a certain fund due and owing

by the Supreme Conclave Improved Order of Heptasophs, a fraternal insurance company, and a body corporate of the State, on account of a benefit certificate in the nature of a life insurance policy, amounting to $3,000, and issued to William Brumbly, now deceased, of Wicomico County.

The order disclaims any interest or claim to the fund, and has paid the same into Court to be distributed to the parties who are entitled to receive it. The material facts of the case as disclosed by the pleadings appear to be these: The Improved Order of Heptasophs, issued to William Brumbly, on the 22nd of September, 1881, an endowment certificate for $1,000, payable at his death to his children Louisa, Ida, Clara, and William. This certificate was surrendered and another was issued on the 17th of March, 1882, for $3,000, payable to the four children above named "and all his surviving children."

Subsequently, the last named certificate was released and cancelled and on the 17th of January, 1889, a new certificate was issued by the order for $3,000, and the benefits were made payable "to his estate."

It further appears from an endorsement on the back of the last named certificate that it was assigned in writing under seal by William Brumbly on the 18th of July, 1890, to Peter Dale, "as collateral security." On the 9th day of September, 1895, Peter Dale having died, assignment in writing was entered upon the certificate as follows:

"I hereby assign, transfer and set over to Harry P. Dale, and Jane D. Dale, administrators of the estate of Peter W. Dale, all my right, title and interest in and to the within certificate absolutely, and the said order or its duly authorized officer is hereby authorized and empowered to pay the same to the said administrators at any time and their receipt shall be a sufficient discharge and acquittance for all liability to me or to my estate on account of the same, witness my hand and seal this 9th day of September, 1895.

Witnesses.

    JAMES E. ELLEGOOD.      WILLIAM BRUMBLY, (Seal.)
    E. H. WALTON.

The fund now in Court, is claimed, first by the administra-

tors of Dale under the two assignments ; secondly, by the administrators of Brumbly as representatives of his personal estate, under the designation "estate" contained in the certificate of insurance, and lastly by the wife and children of the intestate, in their individual capacity, as beneficiaries under the certificate.

The object and purpose of this Order and Society is to do a fraternal insurance business by providing for the sick and distressed members in their lifetime and to create a benefit fund, to be paid on the death of the member, upon certain conditions, to his beneficiary.

Its constitution and laws prescribe who can be designated as beneficiaries, and no certificate shall be made payable "to a creditor nor be assigned, nor be held in whole or in part to secure any debt."

Section 3 of law 3, provides who can be named as such beneficiaries, and they are the family and dependents of the member.

A member may surrender his certificate and have a new one issued, changing the beneficiaries, but the surrender and direction must be made in writing and signed by the Archon and Secretary of the Conclave attached. It is quite clear then that the attempted assignment of the policy on the 18th of July, 1890, to Peter W. Dale as collateral security, and its further assignment on the 9th of September, 1895, on the death of Dale to his administrators conferred no rights to the fund, because under the laws of the order it did not contain a valid designation of a beneficiary. Nor did the assured surrender the certificate and obtain a new one, as required by the Association, but both assignments were made without the consent of the Company, In the case of *Condon* v. *The Mutual Reserve Association*, 89 Md. 123, it is said : "We are called upon to interpret the contract as set forth in the certificate of membership in connection with the constitution and laws. The constitution and by-laws form part of the agreement of insurance, whether mentioned or not." In the case of *Thomas* v. *Cockran*, 89 Md. 403, it is held that the executor was not entitled to a fund in Court, because his testator had no property

in the policy or its proceeds, but only a power to designate, and from time to time to change in the manner prescribed, by the by-laws of the Association, the person entitled to receive such proceeds, when due. *Md. Mut. Association* v. *Clendenin,* 44 Md. 429.

The Act of 1894, ch. 295, which was in force at the date of the last named assignment, declares that such associations are organized and carried on for the sole benefit of its members, and their beneficiaries, and not for profit. It provides that a benefit shall not be assignable except to those named in the Act (a creditor is not included among those thus named) and then only by the consent of the association. It also provides that the fund or benefit shall not be liable to be applied by any legal process or by operation of law to pay any debt or liability of a certificate holder, &c., &c.

The association would have no power then under its constitution or the laws of the State to pay the fund to a creditor of the deceased.

We come then to the meaning and construction to be placed upon the word estate as designated by the assured in the certificate of January 17th, 1889. In the view we take of this case it becomes immaterial whether we hold that the fund shall be paid to the administrators of the assured, Brumbly, and distributed according to the laws of the State, or whether we declare that the word "estate" was an illegal designation. In either case the fund would be distributed to the same persons. The 284 sec. of the constitution of the order, provides that if the designation fails for illegality or otherwise, the amount of the benefit shall be paid to those to whom distribution would be made of his personal estate in case of intestacy as provided by the laws of the State.

The decree of the lower Court directed the fund to be paid to the wife and children of the assured, as the persons entitled, free and clear of the claims of creditors, and for the reasons given we affirm the decree appealed from.

> *Decree affirmed, costs in this Court and the*
> *Court below to be paid out of the fund.*